UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAMONA JOHNSON ) <br> 25 West Glebe Road ) <br> No. C-22 ) <br> Alexandria, VA 22305 ) <br> ) <br> Plaintiff ) <br> v. ) <br> ) <br> ) <br> MICHAEL CHERTOFF, Secretary ) <br> Department of Homeland Security, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No.: <br><br> Judge Roberts: |

## COMPLAINT

### Jurisdiction

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., seeking declaratory relief, damages and other remedies for retaliation for having complained about racial discrimination in employment. This Court has jurisdiction under 42 U.S.C. §§ 2000e-5(f)(3) and 2000e-16(c). Venue lies in this Court as the retaliatory employment practices challenged in this action took place in the District of Columbia.

2. This case is related to a lawsuit filed on behalf of a class of African-American special agents of the United States Secret Service, currently pending in this Court before Judge Roberts. See Moore, et al, v. Chertoff, C.A. 00-953 (RWR). It is also related to another action being filed this same day on behalf of plaintiff's husband, Tony Ball, who is an African American Special Agent and member of the Moore class action, and was a

witness deposed by the government in that class litigation. The retaliation that SA Ball and plaintiff Johnson have experienced arises, at least in part, out of his participation as a member in that class action.

**Parties**

3. Plaintiff, Ramona Johnson, is an employee of the Secret Service, employed in the District of Columbia. Plaintiff Johnson resides in Alexandria, Virginia.

4. Defendant Michael Chertoff is Secretary of the Department of Homeland Security. As part of his official duties, he is responsible for the United States Secret Service. He is sued in his official capacity only. The United States Secret Service has more than 500 employees.

**Facts**

5. Prior to her employment with the United States Secret Service, Ramona Johnson served for nearly five years in the United States Air Force. She is a disabled veteran with an outstanding service record. In June 2005, Ms. Johnson was hired by the Secret Service as a GS-9 IT Specialist in the Network Branch of the Information Resource Management Division. Her service in that position has at all times been exemplary, and she was promoted to GS-11 in July 2006.

6. Plaintiff is married to Tony Ball, who has been a Special Agent in the United States Secret Service since 1989. During his career, SA Ball has served on both the Presidential Protective Detail and the Vice Presidential Detail.

7. On May 16, 2005, SA Ball contacted an EEO counselor and later filed a formal Complaint of Employment Discrimination, alleging that he was denied promotion to the GS-15 level because of his race (African-American).

8. SA Ball was thereafter notified in December 2005 that he would be promoted to a GS-15, but the promotion was contingent on his accepting a geographic transfer to the Miami Field Office. At the time, both SA Ball and plaintiff were stationed in Washington, D.C. SA Ball was assigned to the Vice President's Detail and plaintiff worked as an IT Specialist in the Network Branch, IRM Division. In order to accept the promotion, SA Ball was required to move to Miami, Florida.

9. SA Ball had alleged in his administrative complaint of discrimination that, unlike its treatment of white Special Agents, the Secret Service frequently required African-American Special Agents to relocate from the Washington, D.C. area to be promoted to the GS-15 level. The terms of the promotion SA Ball received in December 2005 (requiring him to geographically move if he desired promotion) mirrored that claim. For this and other reasons, SA Ball continued to pursue his EEO complaint after his selection for promotion. Because SA Ball continued to prosecute his claims of racial discrimination, the Secret Service retaliated against him and his wife, plaintiff Ramona Johnson, by refusing to transfer her to a position in Miami, Florida so that they could remain together.

10. The Secret Service's established practice is that when a husband and wife are both Secret Service employees, the spouse of a transferred employee is transferred at the same time.

11. Beginning on the day they learned of SA Ball's promotion, and continuing at every step in the process of preparing to relocate their family from Washington, D.C. to Miami, plaintiff and SA Ball were reassured that plaintiff would be transferred.

12. For example, on the evening in December 2005 that SA Ball received a telephone call informing him that he had been selected for promotion, plaintiff contacted her supervisor, Cedric Sims, Chief, Network Branch, IRM Division, to ensure that she would also be transferred to the Miami Field Office with her husband. Chief Sims assured her that because SA Ball had been transferred, she would also be transferred. Throughout the following months, Chief Sims assured Ms. Johnson that the Secret Service "keeps families together."

13. Likewise, before placing their Washington, D.C. home on the market, SA Ball spoke to both the Deputy Assistant Director of the Secret Service in Ms. Johnson's line of command, Deputy Assistant Director Frank Larkin, and in his line of command after his transfer to Miami, Deputy Assistant Director Anthony Triplett. Deputy Assistant Director Larkin told SA Ball he had already "signed off" on Ms. Johnson's transfer to the Miami Field Office. With reference to Ms. Johnson's transfer to the Miami Field Office, Deputy Assistant Director Triplett said he would "get it done."

14. Before SA Ball reported to the Miami Field Office, the Special Agent in Charge of the IRM Division, Cornelius Tate, assured Ms. Johnson that her transfer was "going to happen."

15. In reliance on these numerous assurances, SA Ball and Ms. Johnson sold their Washington, D.C. area home, moved into temporary housing, went on a house-hunting trip to the Miami area for which Ms. Johnson was required to utilize annual leave, and entered into a contract and paid a deposit on a home in the Miami area. SA Ball and Ms. Johnson relied on the assurance that both of them would continue to be employed by the Secret Service in selecting the home that they purchased.

16. On April 17, 2006, SA Ball reported to the Miami Field Office.

17. After SA Ball reported to the Miami Field Office, SA Ball and Ms. Johnson again received reassurances from their supervisors that Ms. Johnson would be transferred to join SA Ball in the Miami Field Office.

18. For example, in late-April, 2006, Chief Sims pulled Ms. Johnson aside and confirmed that the "uppers" had signed off on her transfer to the Miami Field Office in the Network Division. He told her that the transfer was "a done deal" and there were only some administrative details remaining.

19. Similarly, shortly after his transfer to the Miami Field Office, SA Ball's Special Agent in Charge, William Sims, informed him that Ms. Johnson's Special Agent in Charge, Cornelius Tate, had called the Miami Field Office and repeated to Special Agent in Charge Sims that Ms. Johnson's transfer was "a done deal."

20. These reassurances culminated in a written assurance to SA Ball and Ms. Johnson's mortgage company. In May, 2006, SA Ball and Ms. Johnson closed on their new house in the Miami area. Their mortgage company required an assurance that Ms. Johnson would be transferred to a Secret Service position in the Miami area. On May 16, 2006, Chief Sims provided the requested assurance. In an email to the mortgage company, Chief Sims wrote: "Thank you for the time to discuss Ms. Johnson's transfer to Miami. As we discussed, by virtue of her husband's transfer to Miami, Ramona Johnson is also transferred to Miami. Please accept this message as a confirmation of her transfer. You may call me if you have any questions."

21. On June 8, 2006, SA Ball filed his request for a hearing with an EEOC Administrative Judge regarding his 2005 EEO complaint.

22. On Friday, July 28, 2006, Chief Sims told plaintiff for the first time that "nothing is in the works" with respect to her transfer to the Miami Field Office. As an explanation for this abrupt change in plans, he told her: "it is a shame you have to pay for the sins of your husband."

23. Chief Sims and Special Agent in Charge Tate have both admitted that the Secret Service's deviation from its established practice of moving spouses together was as a result of retaliation. Chief Sims reported to Ms. Johnson the process was "normally smooth," but SA Ball had "pissed off the Eighth Floor." Similarly, Special Agent in Charge Tate reported to Ms. Johnson that such a transfer was "not normally an issue," but the SA Ball had "upset the Eighth Floor." The Eighth Floor is where the leadership of the Secret Service – including the Director, Deputy Director, and Assistant Directors – sit. The action of SA Ball that "pissed off" or "upset" the Secret Service leadership was his decision to file and pursue an EEO complaint, which is protected activity by law.

24. The Secret Service has offered false and shifting explanations for why Ms. Johnson was not transferred; each explanation is simply a pretext for illegal retaliation. For example, the Secret Service has stated that the Agency did not know SA Ball and plaintiff were married when SA Ball was selected for promotion to the Miami Field Office. In fact, supervisors of both SA Ball and plaintiff were aware of their marital relationship before the promotion.

25. Similarly, the Secret Service has stated that only spouses who are Special Agents are transferred together, not married couples in which one partner is a Special Agent and one partner is a non-Special Agent employee. This is not true. The Secret

Service has repeatedly transferred non-Special Agent employees with their Special Agent spouses.

26. The Secret Service continues to refuse to relocate plaintiff to join SA Ball in the Miami Field Office. Ms. Johnson remains stationed in Washington, D.C., while SA Ball is stationed in Miami, Florida.

27. Defendant's decision not to relocate plaintiff to the Miami Field Office was made with the intent to retaliate against SA Ball and plaintiff for SA Ball's 2005 EEO complaint regarding discrimination against SA Ball in promotion to GS-15 and for SA Ball's failure to drop this EEO complaint after being promoted to the GS-15 level.

28. The blatant and unlawful retaliation engaged in by the Secret Service has caused significant injury to plaintiff. To preserve their respective careers with the Secret Service, and to pay for the home that they had purchased in reliance on repeated assurances by the Secret Service, plaintiff and SA Ball have been forced to live apart for more than a year. The separation has disrupted their marriage, cost them significant out of pocket expenses in order to travel to see each other and maintain separate households, and caused plaintiff Johnson significant humiliation, anger, embarrassment, loss of enjoyment of life and emotional distress.

29. Plaintiff Johnson has exhausted all administrative prerequisites to suit. On July 28, 2006, she was informed she would not be transferred. On August 28 and August 29, 2006, she timely contacted EEO counselors within forty-five days of this retaliatory event. She timely filed a formal complaint of retaliation on November 6, 2006, and thus her claim has been pending for more than 180 days without a final decision.

## **VIOLATION OF LAW**

### **RETALIATION**

30. Paragraphs 1-29 are realleged.

31. SA Ball engaged in protected activity under Title VII of the Civil Rights Act by filing and continuing to prosecute his claims of race discrimination in employment. Defendant's refusal to transfer plaintiff Johnson to the Miami Florida area was intended to punish both SA Ball and plaintiff for SA Ball's protected complaints of discrimination in violation of Title VII.

WHEREFORE, plaintiff requests that this Court:

1) Declare that defendant has violated Title VII of the Civil Rights Act of 1964;

2) Order that defendant immediately transfer plaintiff Johnson to Miami Florida, into an equivalent position and grade in the Headquarters Office, with all associated pay and all related benefits, with prejudgment interest;

3) award plaintiff compensatory damages in an amount to be proven at trial;

4) enjoin defendant from further acts of retaliation;

5) award plaintiff her costs and reasonable attorneys' fees incurred in this action and the administrative claims that necessarily preceded it;

6) award such other relief as the Court deems just.

**JURY DEMAND**

Plaintiff requests trial by jury.

_____
Richard A. Salzman  422497
Heller, Huron, Chertkof
Lerner, Simon & Salzman
1730 M St., NW Suite 412
Washington, DC 20036
(202) 293-8090

Counsel for Plaintiff

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

RAMONA JOHNSON
25 West Glebe Road, No. C-22
Alexandria, VA 22305

## DEFENDANTS

MICHAEL CHERTOFF, Secretary, Dept. of Homeland Security,
MICHAEL B. MUKASEY, Attorney General of the U.S.
JEFFREY A. TAYLOR, U.S. Attorney for the District of Columbia

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

RICHARD A. SALZMAN (422497)
Heller, Huron, Chertkof, Lerner, Simon & Salzman
1730 M Street, NW, Suite 412
Washington, DC 20036
(202) 293-8090

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. *Antitrust*
- [ ] 410 Antitrust

### ○ B. *Personal Injury/Malpractice*
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

### ○ C. *Administrative Agency Review*
- [ ] 151 Medicare Act

**Social Security:**
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

**Other Statutes**
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. *General Civil (Other)*  OR  ○ F. *Pro Se General Civil*

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 610 Agriculture
- [ ] 620 Other Food &Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**Other Statutes**
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Retaliation Under Title VII, Civil Rights Act of 1964

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 300,000.00   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE 12/5/07   SIGNATURE OF ATTORNEY OF RECORD *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.