UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TONY BALL<br><br>and<br><br>RAMONA JOHNSON<br><br>      Plaintiffs<br>v.<br><br><br>MICHAEL CHERTOFF, Secretary<br>Department of Homeland Security,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action Numbers: 07-2192 and<br>)  07-2193 (consolidated) (RWR)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CONSOLIDATED COMPLAINTS

### Jurisdiction

1. Plaintiffs hereby file this Consolidated Complaint pursuant to the Court's June 19, 2008 orders in the above referenced civil actions. This is a consolidated action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., seeking declaratory relief, damages and other remedies for each plaintiff for the retaliation each experienced because of Plaintiff Ball's complaint about racial discrimination in employment. This Court has jurisdiction under 42 U.S.C. §§ 2000e-5(f)(3) and 2000e-16(c). Venue lies in this Court as the retaliatory employment practices challenged in these consolidated lawsuits took place in the District of Columbia.

2. These consolidated cases are related to a lawsuit filed on behalf of a class of African-American special agents of the United States Secret Service, currently pending in

this Court before Judge Roberts. *See Moore, et al, v. Chertoff*, C.A. 00-953 (RWR). While his retaliation claims presented in this lawsuit are not a part of the class action, Plaintiff Special Agent Ball was a member of that class, and indeed was deposed by the Secret Service in that lawsuit. Plaintiff Ramona Johnson is his wife. The retaliation that both plaintiffs have experienced arises, at least in part, out of Plaintiff Ball's participation as a member in that class action.

**Parties**

3. Plaintiff Tony Ball ("SA Ball") is an African-American Special Agent of the United States Secret Service. SA Ball is currently a GS-15 Assistant Special Agent in Charge ("ASAIC") of the Miami Field Office. SA Ball is a resident of Florida.

4. Plaintiff Ramona Johnson is an employee of the Secret Service, employed in the District of Columbia. Plaintiff Johnson resides in Alexandria, Virginia.

5. Defendant Michael Chertoff is Secretary of the Department of Homeland Security. As part of his official duties, he is responsible for the United States Secret Service. He is sued in his official capacity only. The United States Secret Service has more than 500 employees.

**Facts**

6. Tony Ball has been a Special Agent in the United States Secret Service since 1989. He has an exemplary service record. During his career, he has served on both the Presidential Protective Detail and the Vice Presidential Detail. He was promoted to the GS-14 grade as a spokesman for the Secret Service in the Office of Public Affairs and was subsequently a supervisor in the Secret Service's internal compliance section, the Inspection Division. SA Ball is married to Ramona Johnson, who is also a Secret Service

employee serving as an IT Specialist in the Headquarters located here in Washington, D.C. Prior to her employment with the United States Secret Service, Ramona Johnson served for nearly five years in the United States Air Force. She is a disabled veteran with an outstanding service record. In June 2005, Ms. Johnson was hired by the Secret Service as a GS-9 IT Specialist in the Network Branch of the Information Resource Management Division. Her service in that position has at all times been exemplary, and she was promoted to GS-11 in July 2006.

7. SA Ball contacted an EEO counselor on May 16, 2005 and filed a formal Complaint of Employment Discrimination on August 24, 2005, alleging that he was denied promotion to the GS-15 level because of his race (African-American).

8. SA Ball was thereafter notified in December 2005 that he would be promoted to a GS-15, but the promotion was contingent on his accepting a geographic transfer to the Miami Field Office. At the time, both SA Ball and Ramona Johnson were stationed in Washington, D.C. SA Ball was assigned to the Vice President's Detail and Ms. Johnson worked as an IT Specialist in the Network Branch, IRM Division. In order to accept the promotion, SA Ball was required to move to Miami, Florida.

9. SA Ball had alleged in his administrative complaint of discrimination that, unlike its treatment of white Special Agents, the Secret Service frequently required African-American Special Agents to relocate from the Washington, D.C. area to be promoted to the GS-15 level. The terms of the promotion SA Ball received in December 2005 (requiring him to geographically move if he desired promotion) mirrored that claim. For this and other reasons, SA Ball continued to pursue his EEO complaint after his

selection for promotion.  Because SA Ball continued to prosecute his claims of racial discrimination, the Secret Service retaliated against him and his wife, Ramona Johnson.

10.  The Secret Service's established practice is that when a husband and wife are both Secret Service employees, the spouse of a transferred employee is transferred at the same time.

11.  Beginning on the day they learned of SA Ball's promotion, and continuing at every step in the process of preparing to relocate their family from Washington, D.C. to Miami, Plaintiffs Johnson and Ball were reassured that Ms. Johnson would be transferred.

12.  For example, on the evening in December 2005 that SA Ball received a telephone call informing him that he had been selected for promotion, Ms. Johnson contacted her supervisor, Cedric Sims, Chief, Network Branch, IRM Division, to ensure that she would also be transferred to the Miami Field Office with her husband.  Chief Sims assured Ms. Johnson that because SA Ball had been transferred, she would also be transferred.  Throughout the following months, Chief Sims assured Ms. Johnson that the Secret Service "keeps families together."

13.  Likewise, before placing their Washington, D.C. home on the market, SA Ball spoke to both the Deputy Assistant Director of the Secret Service in Ms. Johnson's line of command, Deputy Assistant Director Frank Larkin, and in his line of command after his transfer to Miami, Deputy Assistant Director Anthony Triplett.  Deputy Assistant Director Larkin told SA Ball he had already "signed off" on Ms. Johnson's transfer to the Miami Field Office.  With reference to Ms. Johnson's transfer to the Miami Field Office, Deputy Assistant Director Triplett said he would "get it done."

14. Before SA Ball reported to the Miami Field Office, the Special Agent in Charge of the IRM Division, Cornelius Tate, assured Ms. Johnson that her transfer was "going to happen."

15. In reliance on these numerous assurances, SA Ball and Ms. Johnson sold their Washington, D.C. area home, moved into temporary housing, went on a house-hunting trip to the Miami area for which Ms. Johnson was required to utilize annual leave, and entered into a contract and paid a deposit on a home in the Miami area. SA Ball and Ms. Johnson relied on the assurance that both of them would continue to be employed by the Secret Service in selecting the home that they purchased.

16. On April 17, 2006, SA Ball reported to the Miami Field Office.

17. After SA Ball reported to the Miami Field Office, SA Ball and Ms. Johnson again received reassurances from their supervisors that Ms. Johnson would be transferred to join SA Ball in the Miami Field Office.

18. For example, in late-April, 2006, Chief Sims pulled Ms. Johnson aside and confirmed that the "uppers" had signed off on her transfer to the Miami Field Office in the Network Division. He told her that the transfer was "a done deal" and there were only some administrative details remaining.

19. Similarly, shortly after his transfer to the Miami Field Office, SA Ball's Special Agent in Charge, William Sims, informed him that Ms. Johnson's Special Agent in Charge, Cornelius Tate, had called the Miami Field Office and repeated to Special Agent in Charge Sims that Ms. Johnson's transfer was "a done deal."

20. These reassurances culminated in a written assurance to SA Ball and Ms. Johnson's mortgage company. In May, 2006, SA Ball and Ms. Johnson closed on their

new house in the Miami area. Their mortgage company required an assurance that Ms. Johnson would be transferred to a Secret Service position in the Miami area. On May 16, 2006, Chief Sims provided the requested assurance. In an email to the mortgage company, Chief Sims wrote: "Thank you for the time to discuss Ms. Johnson's transfer to Miami. As we discussed, by virtue of her husband's transfer to Miami, Ramona Johnson is also transferred to Miami. Please accept this message as a confirmation of her transfer. You may call me if you have any questions."

21. On June 8, 2006, SA Ball filed his request for a hearing with an EEOC Administrative Judge regarding his 2005 EEO complaint.

22. On Friday, July 28, 2006, Chief Sims told Ms. Johnson for the first time that "nothing is in the works" with respect to her transfer to the Miami Field Office. As an explanation for this abrupt change in plans, he told her: "it is a shame you have to pay for the sins of your husband."

23. Chief Sims and Special Agent in Charge Tate have both admitted that the Secret Service's deviation from its established practice of moving spouses together was as a result of retaliation. Chief Sims reported to Ms. Johnson the process was "normally smooth," but SA Ball had "pissed off the Eighth Floor." Similarly, Special Agent in Charge Tate reported to Ms. Johnson that such a transfer was "not normally an issue," but the SA Ball had "upset the Eighth Floor." The Eighth Floor is where the leadership of the Secret Service – including the Director, Deputy Director, and Assistant Directors – sit. The action of SA Ball that "pissed off" or "upset" the Secret Service leadership was his decision to file and pursue an EEO complaint, which is protected activity by law.

24. The Secret Service has offered false and shifting explanations for why Ms. Johnson was not transferred; each explanation is simply a pretext for illegal retaliation. For example, the Secret Service has stated that the Agency did not know SA Ball and Ms. Johnson were married when SA Ball was selected for promotion to the Miami Field Office. In fact, supervisors of both SA Ball and Ms. Johnson were aware of their marital relationship before the promotion.

25. Similarly, the Secret Service has stated that only spouses who are Special Agents are transferred together, not married couples in which one partner is a Special Agent and one partner is a non-Special Agent employee. This is not true. The Secret Service has repeatedly transferred non-Special Agent employees with their Special Agent spouses.

26. The Secret Service continues to refuse to relocate Ms. Johnson to join SA Ball in the Miami Field Office. Ms. Johnson remains stationed in Washington, D.C., while SA Ball is stationed in Miami, Florida.

27. Defendant's decision not to relocate Ms. Johnson to the Miami Field Office was made with the intent to retaliate against SA Ball and Ms. Johnson for SA Ball's 2005 EEO complaint regarding discrimination against SA Ball in promotion to GS-15 and for SA Ball's failure to drop this EEO complaint after being promoted to the GS-15 level.

28. The blatant and unlawful retaliation engaged in by the Secret Service has caused significant injury to plaintiff Ball and to plaintiff Johnson. To preserve their respective careers with the Secret Service, and to pay for the home that they had purchased in reliance on repeated assurances by the Secret Service, SA Ball and Ms. Johnson have been forced to live apart for close to two years, and the separation is

ongoing. The separation has disrupted their marriage, cost them significant out of pocket expenses in order to travel to see each other and maintain separate households, and caused both plaintiffs significant humiliation, anger, embarrassment, loss of enjoyment of life and emotional distress.

29. Plaintiffs Ball and Johnson have exhausted all administrative prerequisites to suit. On July 28, 2006, Ms. Johnson was informed she would not be transferred. On August 28 and August 29, 2006, SA Ball timely contacted EEO counselors within forty-five days of this retaliatory event. He timely filed a formal complaint of retaliation on November 6, 2006, and thus his claim has been pending for more than 180 days without a final decision.

## VIOLATIONS OF LAW

### RETALIATION AGAINST PLAINTIFF JOHNSON (CIVIL ACTION 07-2192)

30. Paragraphs 1-29 are realleged.

31. Plaintiff Ball engaged in protected activity under Title VII of the Civil Rights Act by filing and continuing to prosecute his claims of race discrimination in employment. Defendant's refusal to transfer Plaintiff Johnson, SA Ball's wife, to the Miami Florida area was intended to punish Ms. Johnson for SA Ball's protected complaint of discrimination in violation of Title VII.

### RETALIATION AGAINST SA BALL (CIVIL ACTION 07-2193)

30. Paragraphs 1-29 are realleged.

31. Plaintiff Ball engaged in protected activity under Title VII of the Civil Rights Act by filing and continuing to prosecute his claims of race discrimination in employment. Defendant's refusal to transfer Plaintiff Johnson, SA Ball's wife, to the

Miami Florida area was intended to punish SA Ball for his protected complaint of discrimination in violation of Title VII.

WHEREFORE, pursuant to their consolidated individual lawsuits, plaintiffs request that this Court:

1) Declare that defendant has violated Title VII of the Civil Rights Act of 1964;

2) Order that defendant immediately transfer Ramona Johnson to Miami Florida, into an equivalent position and grade in the Headquarters Office, with all associated pay and all related benefits, with prejudgment interest;

3) Award each plaintiff separately compensatory damages in an amount to be proven at trial;

4) Enjoin defendant from further acts of retaliation;

5) Award plaintiffs their costs and reasonable attorneys' fees incurred in this action and the administrative claims that necessarily preceded it;

6) award such other relief as the Court deems just.

## JURY DEMAND

Plaintiffs request trial by jury.

/s/
Richard A. Salzman  422497
Heller, Huron, Chertkof
Lerner, Simon & Salzman
1730 M St., NW Suite 412
Washington, DC 20036
(202) 293-8090
Counsel for Plaintiff