UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
RAMONA JOHNSON, et al.,        )
                               )
        Plaintiffs,            )
                               )
        v.                     )     Civil Action No. 07-2192 (RWR)
                               )
JANET NAPOLITANO,_____     )
                               )
        Defendant.             )
_____)
```

MEMORANDUM OPINION AND ORDER

Plaintiffs Ramona Johnson and her husband Tony Ball bring this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), against the Secretary[1] of the Department of Homeland Security ("DHS"), alleging that the Secret Service, a DHS agency, unlawfully retaliated against Johnson because Ball pursued a discrimination class action and an equal employment opportunity ("EEO") complaint of discrimination against the Secret Service. DHS has moved to dismiss Johnson as a plaintiff under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, alleging that Johnson cannot maintain a cause of action under § 2000e-3(a) because she did not oppose personally an unlawful employment practice or participate in a protected activity, and that Johnson

---

[1] Janet Napolitano is substituted as the defendant under Fed. R. Civ. P. 25(d).

was not perceived as having participated in Ball's activities.
Treated as a motion for summary judgment, DHS's motion will be
denied because a genuine dispute exists over the material fact of
whether the Secret Service perceived Johnson as having
participated in Ball's protected activities and retaliated
against her for her participation.

BACKGROUND

Plaintiffs Johnson and Ball are married Secret Service
employees who used to reside together in the District of
Columbia.  (Consol. Compl. ¶¶ 6, 13.)  Ball is a member of a
class of African-American Secret Service special agents who filed
in 2000 a pending employment discrimination lawsuit ("Moore").
(Id. at 2.)  In 2005, Ball filed an EEO complaint of
discrimination against the Secret Service, alleging that he was
denied a promotion because he is African-American.  (Id. ¶ 7.)
Later, Ball was offered a different promotion, but was notified
that to accept the promotion, he would have to relocate to a
Miami, Florida field office.  (Id. ¶ 8.)  Ball's EEO complaint
included allegations that the Secret Service frequently treated
African-American special agents differently by requiring them to
relocate from the Washington, D.C. area to receive promotions.
(Id. ¶ 9.)

Over the course of six months, Secret Service supervisors
continuously told Ball and Johnson that she also would be

transferred to the Miami office in order to be able to continue
to reside with Ball.  (Id. ¶¶ 11-14, 17-19.)  Such a transfer
reflected established practice within the Secret Service.  (Id.
¶ 10.)  Ball relocated to the Miami office in April 2006, and he
requested a hearing with an EEOC Administrative Judge regarding
his 2005 EEO complaint in June 2006.  (Id. ¶¶ 16, 21.)  In July
2006, however, the Secret Service abruptly notified Johnson that
she no longer would be transferred, and has persisted in refusing
to transfer her.  (Id. ¶¶ 22, 26.)

     After filing her own EEO complaint alleging retaliation and
exhausting all administrative remedies (Johnson Compl. ¶ 29),
Johnson brought this action under 42 U.S.C. § 2000e-3(a),
claiming that the refusal to transfer her was unlawful
"retaliation for having complained about racial discrimination in
employment" (Id. ¶ 1), and arose from Ball's ongoing
"participation as a member in [the] class action" and continued
pursuit of his EEO complaint after his promotion.  (Id. ¶¶ 2, 9,
27.)  Ball filed a parallel action which has been consolidated
with Johnson's.  DHS has moved under Rule 12(b)(6) to dismiss
Johnson as a plaintiff, arguing that § 2000e-3(a) does not
recognize third party retaliation claims and that the Secret
Service never perceived Johnson as a participant in Ball's EEO
complaint.  (Def.'s Mem. in Supp. of Mot. to Dismiss Ramona
Johnson as a Pl. at 1; Reply in Supp. of Def.'s Mot. to Dismiss

-4-

Ramona Johnson as Pl. ("Def.'s Reply") at 9.)  Johnson opposes,
arguing that the statute recognizes a retaliation claim based on
a third party's protected activity, and that the Secret Service
viewed Johnson as a participant in her husband's protected EEO
activity as a class member in the related discrimination class
action, as evidenced by DHS's decision to notice her deposition
in that lawsuit.  (See Pl. Ramona Johnson's Opp'n to Mot. to
Dismiss ("Pl.'s Opp'n") at 15.)

DISCUSSION

A complaint will be dismissed under Rule 12(b)(6) when a
plaintiff fails to state a claim upon which relief can be
granted.  See Fed. R. Civ. P. 12(b)(6).  "To survive a motion to
dismiss, a complaint must contain sufficient factual matter,
acceptable as true, to 'state a claim to relief that is plausible
on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)
(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570
(2007)).  However, "[w]hen 'matters outside the pleadings are
presented to and not excluded by the court' on a motion to
dismiss under Rule 12(b)(6), 'the motion must be treated as one
for summary judgment[.]'"  Highland Renovation Corp v. Hanover
Ins. Group, 620 F. Supp. 2d 79, 82 (D.D.C. 2009) (quoting Fed. R.
Civ. P. 12(d)).  Because Johnson has submitted from outside the
pleadings a deposition notice that has not been excluded, DHS's
motion will be treated as one for summary judgment.

-5-

Summary judgment is granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, a court must draw all justifiable inferences in favor of the nonmovant.  Cruz-Packer v. District of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008).  "A genuine issue is present where the 'evidence is such that a reasonable jury could return a verdict for the non-moving party,' in contrast to a situation where the evidence is 'so one-sided that one party must prevail as a matter of law.'"  Citizens For Responsibility and Ethics in Wash. v. Bd. of Governors of the Fed. Reserve Sys., Civil Action No. 09-633 (RWR), 2009 WL 3859700, at *2 (Nov. 19, 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Title VII prohibits employers from taking retaliatory actions against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  DHS argues that Johnson's complaint should be dismissed because Title VII does not protect family members who are retaliated against based on the protected activity of their spouse.  Some courts considering the scope of § 2000e-3(a) and other similar anti-

-6-

retaliation statutes have found that the statutes' plain language
"requires that the person retaliated against also be the person
who engaged in the protected activity[,]" see Fogleman v. Mercy
Hosp., Inc., 283 F.3d 561, 568 (3d Cir. 2002) (discussing the
ADEA), and provides no "'piggyback' protection" of spouses "who
. . . did not engage in protected activity, but who [are] merely
associated with another employee who did oppose an alleged
unlawful employment practice." Thompson v. N. Am. Stainless, LP,
567 F.3d 804, 816 (6th Cir. 2009) (en banc) (discussing Title
VII); see also Holt v. JTM Indus., Inc., 89 F.3d 1224, 1226 (5th
Cir. 1996) (discussing the ADEA[2]); Smith v. Riceland Foods, Inc.,
151 F.3d 813, 819 (8th Cir. 1998) (discussing Title VII).

   Johnson asserts that Title VII's anti-retaliation provision
should be read to protect her, citing for support DeMedina v.
Reinhardt, 444 F. Supp. 573 (D.D.C. 1978). DeMedina held that a
wife could bring a retaliation claim for actions taken against
her in response to protected activities engaged in by her husband
exclusively. 444 F. Supp. at 580-81. There, the plaintiff
brought a claim under Title VII alleging that she applied for and
was denied a number of positions within the United States
Information Agency based on her husband's anti-discrimination

---

[2]   "The anti-retaliation provisions of the ADEA and Title VII
are similar and 'cases interpreting the latter provision are
frequently relied upon in interpreting the former.'" Holt, 89
F.3d at 1226 n.1 (quoting Shirley v. Chrysler First, Inc., 970
F.2d 39, 42 n.5 (5th Cir. 1992)); see also Thompson, 567 F.3d at
809 n.3.

activities.  See Id. at 574, 580.  Focusing on congressional
intent, DeMedina stated that "Congress unmistakably intended to
ensure that no person would be deterred from exercising his
rights under Title VII by the threat of discriminatory
retaliation."  Id. at 580.  The court further stated that a
strict reading of Title VII "would produce absurd and unjust
results, for while plaintiff's husband might be in a position to
seek injunctive relief to prohibit future reprisals against his
spouse, he would certainly not be in a position to seek back pay
and/or retroactive promotion based on his spouse's employment
denial."  Id.  And Crawford v. Metro. Gov't of Nashville and
Davidson County, Tenn., 129 S. Ct. 846 (2009), examined whether
§ 2000e-3(a) protects "an employee who speaks out about
discrimination not on her own initiative, but in answering
questions during an employer's internal investigation."  129 S.
Ct. at 849.  The Court extended Title VII's anti-retaliation
provision to employees in that circumstance.

Here, the debate may be academic since Johnson's complaint
includes an allegation that she was retaliated against because
she complained about racial discrimination in employment.
(Johnson Compl. ¶ 1.)  In any event, Johnson contends that even
if § 2000e-3(a) is interpreted to provide a cause of action only
for those who personally participate in protected activity, she
nonetheless has alleged sufficient facts -- namely, DHS's

-8-

decision to notice her deposition in <u>Moore</u> -- to demonstrate that the Secret Service perceived her as having participated in her husband's action and retaliated against her based upon this perception.  The Third Circuit has embraced a perception theory of retaliation.  <u>See Fogleman</u>, 283 F.3d at 571-72; <u>but see McKinney v. Bolivar Med. Ctr.</u>, 341 Fed. Appx. 80, 83 (5th Cir. 2009) (noting that "the Fifth Circuit has not adopted this perception theory of retaliation" and "nothing in the record suggests that [the defendant] believed [the plaintiff] to be engaged in protected activity or that it terminated him for that reason").  <u>Fogleman</u> stated that a perception theory is not contradicted by the statute's plain language; rather it is supported by § 2000e-3(a)'s language.  The statute "focus[es] on the employer's subjective reasons for taking adverse action against an employee[.]  [Thus,] it matters not whether the reasons behind the employer's discriminatory animus are actually correct as a factual matter."  <u>Fogleman</u>, 283 F.3d at 571.  For example, if

> an employer refuses to hire a prospective employee because he thinks that the applicant is a Muslim[,] [t]he employer is still discriminating on the basis of religion even if the applicant he refuses to hire is not in fact a Muslim.  What is relevant is that the applicant, whether Muslim or not, was treated worse that he otherwise would have been for reasons prohibited by the statute.

<u>Id.</u>

-9-

In support of her argument, Johnson states that "[l]ong
before plaintiff Johnson filed this claim . . . , defendant
noticed Ms. Johnson for deposition in the <u>Moore</u> . . . litigation,
even though Ms. Johnson, who is not a Special Agent, was *not* a
member of that class."  (Pl.'s Opp'n at 15.)  DHS, on the other
hand, argues that there is no basis to conclude that the Secret
Service perceived Johnson to be a witness at the time it
allegedly retaliated against Johnson because

> Johnson was not even employed by the Secret Service at
> the time her husband was denied the promotion at issue;
> she was not employed by the agency at the time her
> husband initiated the EEO process; and there is no
> allegation in the Complaint that Johnson assisted Ball
> . . . with his EEO Complaint.

(Def.'s Reply at 9.)  DHS further argues that "the allegedly
retaliatory act in this case (not transferring Johnson to Miami)
occurred in July 2006, four months *before* the Secret Service
noticed Johnson's deposition in the *Moore* case."  (<u>Id.</u> at 10.)

DHS's arguments, however, miss the mark.  It was not
necessary for Johnson to have been employed by the Secret Service
at the time Ball was denied the promotion or initiated his
complaint for the Secret Service to have perceived Johnson, once
she was hired, as having participated in Ball's protected
activities.  The complaint states that the defendant abruptly
refused to transfer Johnson the month after Ball filed his
request for a hearing with an EEOC administrative judge.
(Consol. Compl. ¶¶ 21-22.)  That the complaint does not allege

-10-

that Johnson assisted Ball with his EEO complaint is of no moment
for at least two reasons.  It is irrelevant to the issue of
whether the Secret Service perceived Johnson as having
participated in Ball's EEO complaint.  A perception theory of
retaliation does not rest on whether the employee actually
asserts participation in a protected activity; rather, the theory
applies so long as the employer believed that the employee was
engaged in protected activity.  See Fogleman, 283 F.3d at 565.
Also, Ball's protected activities identified in the complaint
were not limited to his EEO complaint.  (See Pl.'s Opp'n at 15
("defendant identified [Johnson] as a witness in connection with
her [husband's] claims[,]" citing Moore) (emphasis added).)

     Moreover, that the defendant did not seek to depose Johnson
until after the alleged retaliatory act took place means little.
The sequence could hardly have been otherwise.  A party could not
be expected to notice the deposition of an employee perceived as
assisting in a spouse's claim before the perception arises.  Nor
does the sequence mean that at the time of the retaliatory act,
there can be no inference that the defendant perceived Johnson as
a participant in her husband's claims.  In addition to Johnson's
assertion that the defendant noticed her deposition and thus
believed her to be a witness in Ball's protected activities, the
complaint alleges sufficient facts to raise an inference that the
defendant perceived her as participating in Ball's action.  The

-11-

complaint alleges that the Secret Service knew that Ball and
Johnson were married; that shortly after Ball requested an EEOC
hearing, Johnson was notified that her transfer would not take
place; and that plaintiffs' supervisors commented repeatedly to
Johnson about Ball's administrative action.  (Consol. Compl.
¶¶ 21-24.)

Johnson has raised a genuine issue as to whether the Secret
Service perceived her as having played a role in her husband's
complaint.  See, e.g., Fogleman, 283 F.3d at 572 (noting that the
district court should have considered plaintiff's perception
theory of retaliation, which was supported by evidence of the
defendant's somewhat colder demeanor toward the plaintiff after
the plaintiff's father filed a discrimination lawsuit and after
the defendant circulated a memo related to the lawsuit, the
defendant's repeated questioning of the plaintiff about the
lawsuit, and the plaintiff's termination itself).  Because a
genuine dispute over this material fact exists, DHS's motion will
be denied.

## CONCLUSION

Whether or not 42 U.S.C. § 2000e-3(a) allows a plaintiff to
bring a claim of retaliation based on the protected activity of a
third party, Johnson has identified a genuine issue of material
fact with respect to her claim of retaliation based on a
perception theory of retaliation.  Accordingly, it is hereby

-12-

ORDERED that the defendant's motion [19] to dismiss, treated as a motion for summary judgment, be, and hereby is, DENIED.  It is further

ORDERED that the Clerk substitute Janet Napolitano as the defendant under Fed. R. Civ. P. 25(d).

SIGNED this 24th day of February, 2010.

                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge